# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-cv-25114-ALTMAN

**LEVAR CURTIS JOHNSON**,
*as trustee of* **LEVAR CURTIS
JOHNSON TRUST**,

      *Plaintiff*,

*v.*

**JIM HILLQUIST**, *et al.*,

      *Defendants*.

_____/

## ORDER DENYING WITHOUT PREJUDICE
## MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

Our Plaintiff, Levar Curtis Johnson, has bought this civil-rights action under 42 U.S.C. §§ 1983, 1985(3), and 1986 against twenty different defendants for participating in a "coordinated and deliberate conspiracy to deprive [Johnson] of his constitutionally protected rights." Complaint [ECF No. 1] at 1–2. Johnson hasn't paid the filing fee, but he's moved to proceed *in forma pauperis* ("IFP"). *See* IFP Motion [ECF No. 3]. After screening the Complaint—as required under 28 U.S.C. § 1915(e)— we find that Johnson is improperly trying to sue several defendants who are immune from suit and that he's failed to state a claim against the remaining non-immune Defendants. Accordingly, we **DENY** the IFP Motion without prejudice and **DISMISS** the Complaint with leave to amend.

### THE FACTS

To understand Johnson's allegations, we must briefly discuss his first federal case, which is also pending before us (the "Civil RICO Case"). *See generally Johnson v. Eleftherio*, No. 24-cv-23366 (S.D. Fla. filed Sept. 3, 2024). Johnson alleges in the Civil RICO Case that certain defendants (none of whom are named defendants in this lawsuit) seized a piece of real property he owned by engaging "in a pattern of racketeering activity that included mail fraud, wire fraud, bankruptcy fraud, and

obstruction of justice." Amended Complaint, *Johnson v. Eleftherio*, No. 24-cv-23366 (S.D. Fla. Oct. 3, 2024), ECF No. 9 at 1–2. In *this case*, Johnson accuses our Defendants of obstructing his "ability to litigate" the Civil RICO Case by maliciously prosecuting him in two other cases pending in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida: Case Nos. F24-20004 and 2024-014415CA01 (the "State Court Cases"). *See* Complaint at 2; *see also Johnson v. Eleftherio*, 2024 WL 5085839, at *1 (S.D. Fla. Dec. 12, 2024) (Altman, J.) ("Johnson wants us to stay two parallel state court actions . . . that were initiated by Defendants and their associates, allegedly as part of a coordinated effort to obstruct Plaintiff's pursuit of justice in this federal case. The first case, Case No. 2024-014415CA01, is a quiet-title action that involves the same property and parties at issue in this federal case. The second case, Case No. F24-20004, is a criminal prosecution against Johnson that (he says) is part of the same coordinated effort to retaliate against Plaintiff for pursuing justice in this federal case." (cleaned up)).

Johnson accuses these Defendants of "collusion and conspiracy" and "fraudulent conduct"—designed (he says) to frustrate Johnson's ability to prosecute the Civil RICO Case. Complaint at 3. The Complaint lists a dizzying array of bad acts the Defendants allegedly perpetrated in furtherance of their conspiracy. *See generally id.* at 9–29. For simplicity's sake, we'll place these allegations into one of two "categories" of misfeasance. In the first group of allegations, Johnson contends that the Defendants directly interfered with his ability to prosecute the Civil RICO Case by (for instance) messing with his mail and preventing him from timely serving the Defendants in the Civil RICO Case. *See, e.g., id.* at 10 ("[T]he Plaintiff made multiple attempts to access his mail or request scanned copies of time-sensitive legal documents to avoid traveling to the UPS Store. . . . Despite these efforts, the Plaintiff encountered repeated obstacles, further impeding his ability to manage his legal obligations effectively."); *id.* at 13 ("Plaintiff received an email notification . . . regarding an attempt to serve RICO Defendant Orlando Deluca at an incorrect address. Upon investigation, Plaintiff confirmed with

Michael Stamatis that no process server had attempted service at the address provided, as Deluca no longer resided there."). The second category of allegations are directed at several judges, prosecutors, and law enforcement officers who (Johnson says) were all complicit in initiating and maintaining the State Court Cases. *See, e.g.*, *id.* at 16 ("Defendants Baptiste and Esquivel, in collusion with the RICO Defendants, executed a coordinated scheme to falsely arrest and kidnap Plaintiff under the guise of legal authority."); *id.* at 24 ("Despite clear instructions and sufficient time to respond, Defendant Sayfie failed to address these allegations [of judicial misconduct], demonstrating willful neglect and deliberate indifference to Plaintiff's constitutional rights.").

## THE LAW

A court may authorize a party to proceed *in forma pauperis* in any suit so long as that party complies with the prescriptions of 28 U.S.C. § 1915. Accordingly, the court must screen such cases and must dismiss a complaint if it concludes that "the action or appeal . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also Mitchell v. Farcass*, 112 F.3d 1483, 1486 (11th Cir. 1997) (explaining the grounds for dismissal under § 1915).

To state a claim upon which relief may be granted, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Under this standard, legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (cleaned up).

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that "leniency does not give a

court license to serve as *de facto* counsel for a party or rewrite an otherwise deficient pleading in order to sustain an action," *Curtiss v. Comm'r of Soc. Sec.*, 856 F. App'x 276, 276 (11th Cir. 2021) (cleaned up). *Pro se* litigants cannot "simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim. . . . Judges cannot and must not fill in the blanks for *pro se* litigants; they may only cut some linguistic slack in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

As we've said, Johnson's Complaint names twenty Defendants. *See* Complaint at 6–8. Four of these are private citizens: Jim Hillquist, the "Senior Vice President of The UPS Store, Inc."; Alexander Friedman, the "Franchise Owner of UPS Store #7032"; Sean Zawyer, the "Owner of Z Process Service Inc."; and Kelly Melone, the "Director of Operations for Z Process Inc." (the "Private Defendants"). *Id.* at 6. Three of the Defendants— Stephanie V. Daniels, Yvette M. Esquivel, and William Jean Baptiste—are employed by the Miami-Dade Police Department (the "Officer Defendants"). *Id.* at 7. Another two Defendants are State Attorney Katherine Fernandez Rundle and Assistant State Attorney Stacy Cleveland (the "Prosecutor Defendants"). *Ibid.* Ten of the Defendants are judges of the Eleventh Judicial Circuit Court or the Third District Court of Appeal: Judges Nushin Sayfie, Chiaka Ihekwaba, Laura Stuzin, Ariana Fajardo Orshan, Mark Blumstein, Thomas Logue, Ivan F. Fernandez, Edwin A. Scales, Monica Gordo, and Alexander S. Bokor (the "Judicial Defendants"). *Id.* at 7–8. And the final Defendant is Marissa Goldstein, a "public defender for the Eleventh Judicial Circuit of Florida[.]" *Id.* at 8. After careful review, we find that the Prosecutor and Judicial Defendants are immune from suit and that Johnson has failed to state a claim against the remaining Defendants.

### I.    The Immune Defendants

#### A.  The Prosecutor Defendants

Johnson alleges that Defendant Cleveland "facilitated obstruction of justice through improper legal filings and manipulation of the judicial process" and that Defendant Fernandez Rundle—the elected State Attorney for Miami-Dade County—"failed to intervene" and stop her subordinate's allegedly unlawful actions. Complaint at 7. The gravamen of Johnson's claims against Cleveland and Fernandez Rundle is that they are unlawfully prosecuting his Case No. F24-20004 as a "retaliatory action[ ] intended to disrupt Plaintiff's pursuit of justice[.]" *Id.* at 18. To perpetuate this unlawful prosecution, Johnson says that Cleveland "filed [an] information with the court[,]" gave Johnson "insufficient notice" about motions she filed in the criminal case, and falsely characterized the evidence against Johnson in motions and during hearings. *Id.* at 18–20. Fernandez Rundle, Johnson adds, ignored Johnson's correspondence, in which he had complained about the "misconduct and procedural violations" he suffered at the hands of Cleveland. *Id.* at 20.

Both Cleveland and Fernandez Rundle are immune from suit. Johnson accuses the Prosecutor Defendants of maintaining an illegal prosecution against him by (among other things) filing "fraudulent motions," manipulating bond proceedings, and "orchestrating" secret hearings. Complaint at 33. But a prosecutor is entitled to "absolute immunity" for "activities [that are] intimately associated with the judicial phase of the criminal process." *Kassa v. Fulton Cnty., Ga.*, 40 F.4th 1289, 1292 (11th Cir. 2022) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). That means a prosecutor is immune "for appearances in judicial proceedings, including prosecutorial conduct before grand juries, statements made during trial, examination of witnesses, and presentation of evidence in support of a search warrant during a probable cause hearing." *Rehberg v. Paulk*, 611 F.3d 828, 837–38 (11th Cir. 2010); *see also Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) ("Prosecutors have absolute immunity when filing an information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate complaints about the prison system, and threatening further criminal prosecutions[.]").

Since the Prosecutor Defendants' acts were "undertaken in preparing for the initiation of judicial proceedings or for trial" (and because they occurred "in the course of [their] role as an advocate for the State"), the Prosecutor Defendants are entitled to absolute immunity. *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).

Trying to avoid this immunity problem, Johnson argues that certain exceptions to absolute prosecutorial immunity apply to his case. As to Defendant Fernandez Rundle, Johnson cites *Burns v. Reed*, 500 U.S. 478 (1991), for the proposition that "[p]rosecutorial immunity does not apply to administrative omissions enabling fraud." Complaint at 33. This is a correct statement of the law, but the "administrative" exception doesn't apply here. "[A]bsolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009). That's not what we have here. The "administrative inaction" Johnson complains about is Fernandez Rundle's alleged failure to "act on formal notice of fraud committed by her subordinates" and her "deliberate indifference" to "ongoing constitutional violations." Complaint at 32. Both the Supreme Court and the Eleventh Circuit have held that a prosecutor's "supervisors [are] entitled to the same immunity for approving or failing to prevent [their subordinate's] conduct"—so long as the underlying conduct is itself protected by prosecutorial immunity. *Hoffman v. Off. of State Att'y, Fourth Jud. Cir.*, 793 F. App'x 945, 954 (11th Cir. 2019); *see also Goldstein*, 555 U.S. at 346 (holding that "supervisory prosecutors" are immune from "a suit charging that a supervisor trained and supervised inadequately"). Accordingly, Defendant Fernandez-Rundle's alleged failure to correct or disavow Cleveland's conduct is also protected by prosecutorial immunity.

With respect to Defendant Cleveland, Johnson relies on *Kalina v. Fletcher*, 522 U.S. 118 (1997), for his view that prosecutors aren't "immune for fraud, false filings, or investigative conduct." Complaint at 33. But *Kalina*'s holding isn't as broad as Johnson suggests. In that case, the Supreme

Court found that a prosecutor who "act[ed] as a complaining witness rather than a lawyer" was not protected by prosecutorial immunity when she made false statements in support of an arrest warrant. *Kalina*, 522 U.S. at 129. Cleveland didn't act like a "complaining witness" here. She prepared motions, attended court proceedings, and filed a charging document against Johnson—in other words, she engaged in the core functions of a prosecutor. *See Rehberg*, 611 F.3d at 837 ("Absolute immunity accordingly applies to the prosecutor's actions 'in initiating a prosecution and in presenting the State's case.'" (quoting *Imbler*, 424 U.S. at 431)). And, contra Johnson's arguments, a prosecutor like Cleveland is still protected by absolute immunity even if her conduct is fraudulent or dishonest. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279–80 (11th Cir. 2002) ("Under these principles, it is clear that, even if Lazarus knowingly proffered perjured testimony and fabricated exhibits at trial, he is entitled to absolute immunity from liability for doing so."); *Gilbert v. Eleventh Jud. Cir. Ct. of Miami-Dade Cnty.*, 2024 WL 245220, at *2 (S.D. Fla. Jan. 23, 2024) (Altman, J.) (holding that absolute immunity "applies even if a prosecutor knowingly acts in bad faith").

In short, the Prosecutor Defendants are absolutely immune from suit because all their relevant actions occurred "in the course of [their] role as an advocate for the State." *Jones*, 174 F.3d at 1281. The claims against Fernandez Rundle and Cleveland must therefore be **DISMISSED**.

### B.  The Judicial Defendants

Johnson has also sued ten state-court judges—five of whom are trial-court judges of the Eleventh Judicial Circuit and five of whom are appellate judges on the Third DCA. *See* Complaint at 7–8. Johnson explains that each of these judges violated his rights in different ways. Judge Ihekwaba "ignored valid, executed private contracts and issued a writ of possession without providing due process." *Id.* at 30. Judge Blumstein "entered judgment without ensuring compliance with Florida Rule of Civil Procedure 1.115(c)[.]" *Ibid.* Judge Stuzin "conducted a secret hearing . . . and proceed[ed] without proper notice" and then manipulated a *Faretta* hearing "after Plaintiff avoided jurisdiction."

*Id.* at 31. Judge Fajardo Orshan "granted motions without notice to Plaintiff, depriving him of the opportunity to be heard." *Ibid.* Judge Sayfie "failed to act on formal notice of judicial misconduct" after Johnson informed her about the other Judicial Defendants' alleged misconduct. *Ibid.* And Judges Logue, Fernandez, Scales, Gordo, and Bokor (all of whom sit on the Third DCA) "were notified of systemic fraud and procedurals irregularities but failed to address these issues." *Id.* at 32. As with the Prosecutor Defendants, the Judicial Defendants are immune from suit.

Judges are "entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the clear absence of all jurisdiction." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000). "Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judges' chamber or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (cleaned up). The alleged judicial acts at issue in our case are: (1) the wrongful issuance of a writ of possession; (2) the entry of a procedurally improper judgment; (3) conducting a "secret hearing" where the judge misapplied *Faretta*; (4) failing to act after being notified about judicial misconduct; and (5) failing to favorably adjudicate Johnson's appeal. *See* Complaint at 30–32. But ruling on motions, holding hearings, adjudicating appeals, and issuing writs are all actions the Judicial Defendants took in their judicial capacities. *See Smith v. Shook*, 237 F.3d 1322, 1325 (11th Cir. 2001) (holding that "issuing subpoenas, ruling on evidence, regulating hearings, and making or recommending decisions" are judicial acts); *Cox v. Mills*, 465 F. App'x 885, 887 (11th Cir. 2012) ("Additionally, the misconduct that Cox alleged below and now argues on appeal—that the state court judges held hearings, disposed of motions, and made recusal decisions—are all, by their nature, normal judicial functions.").

Anticipating this problem, Johnson offers two counterarguments. *First*, he relies on three Supreme Court cases—*Pulliam v. Allen*, 466 U.S. 522 (1984), *Forrester v. White*, 484 U.S. 219 (1988), and *Mireles v. Waco*, 502 U.S. 9 (1991)—for his position that the Judicial Defendants aren't immune because their actions were "unrelated to judicial decision-making," "taken outside [their] jurisdiction," "fraudulent," and "administrative in nature." Complaint at 30–32. For starters, Johnson is right that judges "should not be given absolutely immunity" for "employment decisions and administrative functions." *Forrester*, 484 U.S. at 222; *see also Mireles*, 502 U.S. at 11 ("[A] judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity."). But the Judicial Defendants' alleged acts were judicial—not administrative—so Johnson's cited decisions are irrelevant to our case. *See Smith*, 237 F.3d at 1325. The only allegation that comes close to crossing the judicial-administrative threshold is the claim that Judge Sayfie "failed to act on formal notice of judicial misconduct." Complaint at 31. But the Eleventh Circuit has held that investigating allegations of judicial misconduct is itself a judicial act protected by judicial immunity. *See Watson v. Fla. Jud. Qualifications Comm'n*, 746 F. App'x 821, 825–26 (11th Cir. 2018) (holding that members of a hearing panel who "investigate sitting judges" are "entitled to absolute judicial immunity based on the functions of their position" (citing *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993))).

*Second*, Johnson claims that the Judicial Defendants acted in bad faith and "beyond [their] jurisdiction[.]" Complaint at 30. Half of this argument is irrelevant. Judges enjoy "absolute immunity for judicial acts regardless of whether [they] made a mistake, acted maliciously, or exceeded [their] authority." *McCullough v. Finley*, 907 F.3d 1324, 1331 (11th Cir. 2018). The *only* exception to this rule applies when a judge acts "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12. But a judge only acts in the "complete absence of jurisdiction" when "there is clearly no jurisdiction over the subject matter[.]" *Dykes v. Hosemann*, 743 F.2d 1488, 1495 (11th Cir. 1984) (cleaned up). That a judge might have "incorrectly exercised jurisdiction" is not enough because errors a judge made "in

excess of his or her jurisdiction" are still protected by judicial immunity. *Gilbert*, 2024 WL 245220, at *2 (quoting *Bolin*, 225 F.3d at 1239).[1] Although Johnson insists—in a wholly conclusory way—that the Judicial Defendants acted in excess of their jurisdiction, they plainly had jurisdiction to preside over the State Court Cases that are the subject of this litigation. The Eleventh Judicial Circuit has jurisdiction over felony offenses (like the one charged in Case No. F24-20004), *see* FLA. STAT. § 26.012(2)(d) ("Circuit courts shall have exclusive jurisdiction . . . [o]f all felonies[.]"), and quiet-title actions (like Case No. 2024-014415CA01), *see id.* § 26.012(2)(g) ("Circuit courts shall have exclusive jurisdiction . . . [i]n all actions involving the title and boundaries of real property.").[2] And, it should go without saying, the Third DCA would have had jurisdiction to review any order Johnson appealed from the Eleventh Judicial Circuit. *See* FLA. R. APP. P. 9.030(b)(1)(A) ("District courts of appeal shall review, by appeal . . . final orders of trial courts[.]").

Since Johnson is, at best, quibbling with the outcome of certain state-court decisions—and because he cannot allege that any of the Judicial Defendants acted in the complete absence of jurisdiction—the ten judges he names in the Complaint are absolutely immune from suit. The Judicial Defendants are therefore **DISMISSED** from this case.

---

[1] *See also Dykes*, 743 F.2d at 1495 ("Illustrative of a clear lack of subject matter jurisdiction would be a situation where a probate judge, with jurisdiction only over wills and estates, would try a criminal case. The probate judge would not be immune from suit. On the other hand, if a judge of a criminal court convicted a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.").

[2] Johnson's Complaint also mentions two other cases in which the Judicial Defendants may have been involved: a foreclosure action in Case No. 2018-040275CA01 before Judge Blumstein; and an "unlawful detainer" case in Case No. 2024-037318CC05 before Judge Ihekwaba. *See* Complaint at 7, 30. We needn't delve into the details of these cases here because Judges Blumstein and Ihekwaba plainly had jurisdiction over them. *See Schmidt v. JJJTB, Inc.*, 357 So. 3d 208, 211 (Fla. 2d DCA 2023) ("Circuit courts, generally, have subject matter jurisdiction over foreclosure cases."); *Pro-Art Dental Lab, Inc. v. V-Strategic Grp., LLC*, 986 So. 2d 1244, 1251 (Fla. 2008) ("[E]jectment actions are subject to the exclusive original jurisdiction of Florida's circuit courts, while county courts generally possess subject-matter jurisdiction in unlawful-detainer and tenant-removal actions (subject to their amount-in-controversy limit).").

## II.     The Non-Immune Defendants

We now turn to Johnson's claims against the remaining eight Defendants (the four Private Defendants, the three Officer Defendants, and Defendant Goldstein). Johnson contends that these Defendants violated his civil rights, in violation of 42 U.S.C. § 1983, and conspired to interfere with his civil rights, in violation of 42 U.S.C. § 1985(3). *See* Complaint at 35, 40. He also avers that Defendants Hillquist, Zawyer, and Daniels failed to stop the § 1985(3) conspiracy, in violation of 42 U.S.C. § 1986. *See id.* at 47. After considering the Complaint's allegations, we find that Johnson has failed to state a plausible claim as to *any* of the remaining eight Defendants. *First*, we find that he cannot state a claim under § 1985(3) or § 1986 as to any Defendant. *Second*, we explain that neither the Private Defendants nor Goldstein can be used under § 1983 because they didn't act under color of state law. *Third*, we conclude that Johnson hasn't stated a claim as to the Officer Defendants because his allegations are insufficient to show that they violated his constitutional rights.

### A.  The Claims Under Sections 1985 and 1986

Section 1985 creates a cause of action against defendants who conspire to deprive, "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3). To state a claim under § 1985(3), the plaintiff must allege "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the defendant's action taken in furtherance of the conspiracy." *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).[3]

---

[3] There are four elements to a Section 1985(3) claim: The defendant must have "(1) conspired or gone in disguise on the highway or on the premises of another, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) taken or caused an action to be taken in furtherance of the conspiracy's object, and (4) injured an individual's person or property or deprived her of exercising any right or privilege of a United States citizen." *Dean*, 12 F.4th at 1255 n.8 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). Since Johnson comes nowhere close to establishing the second element (that the Defendants' actions were designed to harm a specific "class of persons"), we needn't discuss the other three.

The Plaintiff must show that the Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group" to which the Plaintiff belongs. *Bray*, 506 U.S. at 272. Notably, "[t]wo types of classes come within § 1985(3)'s protection: (1) classes having common characteristics of an inherent nature—*i.e.*, those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku Klux Klan Act." *Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1147 (11th Cir. 1996).

Here, Johnson alleges that the Defendants violated 42 U.S.C. § 1985(3) by conspiring "to obstruct justice, deny equal protection, and undermine Plaintiff's access to courts" because he is a "*pro se* litigant." Complaint at 40. Put another way, Johnson says that the Defendants "specifically targeted" and conspired against him "due to systemic bias against self-represented individuals." *Ibid.*; *see also id.* at 44 ("Plaintiff belongs to a class of *pro se* litigants, individuals who navigate the legal system without representation and who are subject to systemic disadvantages, including judicial bias, procedural traps, and lack of access to legal resources."). But "'non-lawyer pro se litigants' are not a protected class." *McColligan v. Vendor Res. Mgmt.*, 2019 WL 1051188, at *6 (M.D. Ga. Mar. 5, 2019) (Treadwell, J.) (cleaned up) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988)); *see also Eitel v. Holland*, 787 F.2d 995, 1000 (5th Cir. 1986) ("[W]e hold that pro se plaintiffs do not constitute a class for whose members § 1985(3) provides a remedy."); *Roden v. Diah*, 2008 WL 5334309, at *9 (W.D. Va. Dec. 19, 2008) ("This court also agrees that the class of *pro se* litigants is not the type of class which § 1985 was intended to protect."). In other words, even if Johnson's allegations were true, he still cannot state a claim under § 1985(3) because the statute doesn't protect self-represented individuals.

For this same reason, Johnson's § 1986 claims must be dismissed. Under that provision, "a defendant may be liable if he knew of a § 1985 conspiracy and failed to prevent it, despite having the power to do so." *Johnson v. Wilbur*, 375 F. App'x 960, 964 (11th Cir. 2010) (citing *Park v. City of Atlanta*,

120 F.3d 1157, 1160 (11th Cir. 1997). "Section 1986 claims are therefore derivative of § 1985 violations." *Park*, 120 F.3d at 1159–60. Since the Plaintiff is not a member of a protected class under § 1985(3), his § 1986 claim necessarily fails. *See Wilbur*, 375 F. App'x at 964 ("Because there was no § 1985 conspiracy to deprive Johnson of his civil rights, his 42 U.S.C. § 1986 complaint is likewise without merit." (citing *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993))). Accordingly, Johnson's §§ 1985(3) and 1986 claims must be **DISMISSED**.

### B.  The Section 1983 Claims

A viable "section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under the color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156–57 (1978)). Johnson alleges that the Defendants violated § 1983 by "obstructing Plaintiff's access to the courts, facilitating false arrest, seizing Plaintiff's property without due process, and engaging in procedural manipulation to deny Plaintiff equal protection and fair adjudication,"—thus depriving Johnson of his rights under the First, Fourth, Fifth, and Fourteenth Amendments. Complaint at 35. As we're about to explain, Johnson has failed to state a viable § 1983 claim against the eight Defendants who are not immune from suit because they *either* didn't act under color of state law *or* didn't deprive Johnson of any rights guaranteed by federal law or the U.S. Constitution.

### 1.  *The Private Defendants Did Not Act Under Color of State Law*

Johnson has advanced a § 1983 claim against the Private Defendants—Hillquist and Friedman, who run a UPS Store; and Zawyer and Melone, who own and operate a process-serving company. *See* Complaint at 6. Johnson claims that Hillquist and Friedman violated his First Amendment rights by withholding "critical legal correspondence . . . delaying or impeding Plaintiff's ability to respond to filings or prepare defenses." *Id.* at 36. But Johnson fails to explain how Zawyer and Melone violated

his civil rights, and he never mentions them by name when discussing his § 1983 claim. *See generally id.* at 35–40. Nevertheless, we can glean several of the relevant factual allegations from other portions of the Complaint.

As to Hillquist and Friedman, Johnson says that, although mail relating to a criminal case against him was sent through UPS, UPS Store #7032 withheld the mail because of "an unresolved issue." *Id.* at 9. Johnson claims that this issue had been resolved, "raising suspicions about intentional interference with the Plaintiff's correspondence." *Id.* at 9–10. Johnson adds that he unsuccessfully "made multiple attempts to access his mail or request scanned copies of time-sensitive legal documents to avoid traveling to the UPS store." *Id.* at 10. Johnson then sent Hillquist certified mail, explaining the foregoing events, to which "Hillquist failed to respond or take corrective measures." *Ibid.* These actions, according to Johnson, demonstrate "willful neglect and tacit approval of actions designed to deprive the Plaintiff of his constitutional rights[.]" *Ibid.*[4]

Conversely, as to Zawyer and Melone, Johnson avers that he paid "$645 via PayPal to cover the cost of nine summonses for case [the Civil RICO Case,] and Defendant Kelly Melone failed to

---

[4] A common thread throughout Johnson's Complaint is his belief that several of the Defendants have already admitted to the alleged civil-rights violations by failing to respond to Johnson's "self-executing private contracts"—copies of which have been attached to the Complaint. Complaint at 2; *see generally* Appendix of Evidence [ECF No. 1-2]. Johnson believes that this "tacit acquiescence" means that the Defendants have "confirm[ed] their collusion and intent to obstruct justice." Complaint at 2; *see also* Memorandum of Law [ECF No. 4] at 2 (explaining the validity of "self-executing contracts and administrative process"). This is a tactic we've seen from other *pro se* litigants before—where the plaintiff will claim that the defendants admitted a whole host of damning accusations because they didn't "sufficiently disavow" an "affidavit" or "contract" the plaintiff sent them. *Steven McArthur-Brooks Est. v. Moreno*, 2025 WL 30390, at *1 (S.D. Fla. Jan. 6, 2025) (Altman, J.). This theory is pure nonsense, so we won't give the Defendants' purported failure to respond to Johnson's "self-executing private contracts" any weight. *See Price v. Lakeview Loan Serv., LLC*, 2021 WL 1610097, at *7 (M.D. Fla. Apr. 26, 2021) (Steele, J.) ("While Plaintiff argues that by leaving the Credit Agreement in Defendant's possession equates to acceptance, this cannot be true because absent specific indications of intent to accept an offer, an offeree's silence is not acceptance of an offer." (cleaned up)); *Orman v. Cent. Loan Admin. & Reporting*, 2019 WL 6841741, at *4 (D. Ariz. Dec. 16, 2019) ("It is a fundamental principle of contract law that silence does not constitute acceptance of a contract." (citing RESTATEMENT (SECOND) OF CONTRACTS § 69 (1981))).

allocate the payment correctly." *Id.* at 10–11. Johnson also claims that Zawyer and Melone made several errors in serving the Defendants in the Civil RICO Case. *See generally id.* at 10–15. According to Johnson, these actions show "a deliberate effort to obstruct Plaintiff's access to justice and due process rights." *Id.* at 15.

Section 1983 applies only to those who "act[ ] under color of state law"—*viz.*, when a defendant "acts with authority possessed by virtue of his employment with the state." *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997). The "under-color-of-state-law element . . . excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). Johnson admits that the Private Defendants are employed by private companies (the UPS Store and Z Process Service, Inc.), and he concedes that they don't work for any state, local, or municipal agency. *See* Complaint at 6. Since these Defendants don't work for the government, Johnson must show that they fit into one of the following three "rare circumstances": "(1) [that] the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) [that] the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) [that] the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise ('nexus/joint action test')." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (cleaned up).

Johnson hasn't shown that any of these three exceptions applies here. Johnson *does* say that there was some conspiracy between the Private Defendants and the *Civil RICO Defendants* (none of whom are defendants in our case). *See, e.g.*, Complaint at 9 ("[Defendant] Friedman is identified as a witness in the criminal case initiated against the Plaintiff by the RICO Defendants. His involvement further highlights his direct participation in the events underlying the conspiracy alleged by the Plaintiff."); *id.* at 13 (alleging that the November 5, 2024, emails "expose[d] evidence of collusion,

corroboration, and conspiracy between Defendant Melone and the RICO Defendants"). But he never alleges (or even implies) that the Private Defendants were "coerced" by any state officials, that the Private Defendants were providing a service that's "traditionally [within] the exclusive prerogative of the State," or that that the Private Defendants were "joint participants" in an enterprise with the State, *see Rayburn*, 241 F.3d at 1347. Johnson has thus failed to satisfy any of the three "rare" exceptions to the color-of-state-law element.

Moreover, a plaintiff's broad and conclusory allegations about an alleged conspiracy between private and state actors won't satisfy our federal pleading standards. *See Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) ("A showing of conspiracy requires more than conclusory allegations and a mere scintilla of evidence. . . . A plaintiff claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists." (cleaned up)); *Sylvester v. 50 State Sec. US Assoc., Inc.*, 2018 WL 4150910, at *4 (S.D. Fla. Aug. 30, 2018) (Cooke, J.) (finding that the plaintiff's "conclusory belief that a County employee aided in 50 State's retaliation against him" was insufficient to meet the state-compulsion test). Since the Private Defendants didn't act under color of state law, Johnson hasn't stated a § 1983 claim against them.[5]

### 2. *Johnson Cannot State a § 1983 Claim Against Goldstein*

Our next Defendant is Marissa Goldstein, Johnson's public defender in Case No. F24-20004. *See* Complaint at 35. Johnson says that Goldstein "assumed unauthorized representation of Plaintiff"

---

[5] We also doubt that the Private Defendants violated any of Johnson's constitutional rights—even if they had acted under color of state law. The only factual allegations in the Complaint about these Defendants involve the withholding of mail and errors/delays made while serving process. We're skeptical that either of these acts rise to the level of a constitutional violation, but we'll assume for purposes of this Order that Johnson *might* be able to plead additional facts that *could* support these claims. *See Kelly v. U.P.S. Store*, 2021 WL 2256264, at *3 (D. Mont. June 3, 2021) ("[T]o the extent Kelly alleges Defendants mishandled his legal mail in violation of some unspecified constitutional right, he fails to state a claim under 42 U.S.C. § 1983."); *Sanchez v. Hoosac Bank*, 2014 WL 1326031, at *7 (S.D.N.Y. Mar. 31, 2014) ("Although service of process fulfills an important due process function, improper service is not a free-standing due process violation.").

in his state-court criminal case and is colluding with the Judicial Defendants and the Prosecutor Defendants "to set a trial date and make determinations on Plaintiff's behalf without consent, violating Plaintiff's Sixth Amendment right to self-representation and furthering the deprivation of due process." *Ibid.* But it's axiomatic that an aggrieved client cannot sue his public defender under § 1983 for acts she undertook as his defense lawyer. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[W]e decide only that a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Hall v. Tallie*, 597 F. App'x 1042, 1044 (11th Cir. 2015) ("Public defenders, although employed by the government, are not typically viewed as acting under color of state law.").

Unlike what he did with the Private Defendants, Johnson explicitly says that Goldstein is conspiring with other state actors (namely, the state-court judges and prosecutors) to "represent" Johnson in his criminal case against his will. Complaint at 39. Although a public defender "may be sued under § 1983 if [she] conspired with someone who did act under color of state law," *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985), the "acts" Goldstein took in furtherance of this alleged conspiracy didn't violate Johnson's constitutional rights. A lawyer doesn't violate her client's rights by making tactical decisions the client doesn't agree with. *See Taylor v. Illinois*, 484 U.S. 400, 417–18 (1988) ("Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." (footnote omitted)). And, to the extent Johnson believes that the state judge and Goldstein ignored his valid request to proceed *pro se*, that's a claim he could (and should) have raised on direct appeal—not here, in a federal proceeding under § 1983. *See, e.g.*, *Strong v. Warren*, 2021 WL 12185402, at *2 (N.D. Ga. Mar. 11, 2021) (Cohen, J.) ("Moreover, even if the state trial court has prevented him from representing himself, that is not the type of extraordinary circumstance that would

justify this Court's intervention in the state court criminal proceeding." (citing *Spencer v. Olin*, 616 F. App'x 401, 402 (11th Cir. 2015))); *Rogers v. Tate*, 2017 WL 2952293, at *2 (N.D. Fla. June 21, 2017) (Jones, Mag. J.) ("To the extent that Plaintiff contends the state court erred under *Faretta* when Plaintiff invoked his right of self-representation, such a claim is not properly raised by way of a civil rights complaint. If Plaintiff is convicted in his underlying criminal case, such a claim would be asserted by way of a federal habeas corpus petition, after first exhausting his state remedies."), *report and recommendation adopted*, 2017 WL 2931398 (N.D. Fla. July 10, 2017) (Rodgers, C.J.).

     We therefore dismiss Johnson's § 1983 claim against Goldstein.

### 3.  The Officer Defendants Did Not Violate Johnson's Constitutional Rights

     Our final group of Defendants are three members of the Miami-Dade Police Department: Officers Esquivel and Baptiste and the Director of the Miami-Dade Police Department, Stephanie V. Daniels. Johnson accuses Officers Esquivel and Baptiste of violating his Fourth Amendment rights through "false arrest and the seizure of his property . . . without legal justification." Complaint at 37. Johnson avers that the two officers conspired with the defendants in the Civil RICO Case to "falsely arrest and kidnap Plaintiff" and then "seize[ ] possession of [Johnson's] property, change[ ] the locks, and [have] Plaintiff's vehicle towed[.]" *Id.* at 16–17. When Johnson reported this "misconduct" to Defendant Daniels, she "failed to address the allegations" and therefore demonstrated her "willful neglect and deliberate indifference to Plaintiff's constitutional rights[.]" *Id.* at 17–18. We read these allegations as Johnson's attempt to assert false-arrest and illegal-seizure claims against the Officer Defendants under the Fourth Amendment.

     The Officer Defendants were clearly acting under color of state law since their actions were taken "pursuant to the power [they] possessed by state authority[.]" *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995). But Johnson must still allege that those acts violated his federally protected rights. To prevail on a false-arrest claim under the Fourth Amendment, Johnson must show

that his arrest was "without a warrant and lacking probable cause[.]" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). But an arrest doesn't violate the Constitution if the arresting officer had "arguable probable cause"—*i.e.*, if a reasonable officer "in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." *Ibid.* An illegal-seizure claim is similar: "A police officer violates the Fourth Amendment when he seizes a person's property *either* without probable cause *or* in an otherwise unreasonable manner. The 'crucial inquiry' for a seizure's legality is whether it was 'reasonable under all the circumstances.'" *Lemieux v. Bango*, 2024 WL 3518628, at *4 (S.D. Fla. July 24, 2024) (Altman, J.) (cleaned up) (first citing *Case v. Eslinger*, 555 F.3d 1317, 1320 (11th Cir. 2009); and then quoting *United States v. Schandl*, 947 F.2d 462, 465 (11th Cir. 1991)).

We can't say that Johnson has stated a Fourth Amendment claim against any of the Officer Defendants, because his allegations are conclusory and contradictory. Johnson doesn't provide any facts about his arrest or the seizure of his property—other than to say that these things happened and that they were "orchestrated by the RICO Defendants to obstruct justice." Complaint at 16. Although Johnson claims that Baptiste and Esquivel arrested him and seized his property "without legal justification," *id.* at 37, he admits (in another part of the Complaint) that Baptiste and Esquivel acted because they received "false affidavits" related to "Quiet Title Case 2024-014415CA01," *id.* at 16. The circumstances (and legality) of Johnson's arrest (and the seizure of his property) are wholly dependent on whether *the officers* believed the arrest and seizure was reasonable, and we can't answer this question unless Johnson tells us what the officers knew at the time of the arrest and seizure and (importantly) whether they thought they were lawfully obeying court orders. *See Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020) ("El's conclusory assertion that McCord acted without probable cause is devoid of any facts giving rise to a 'plausible suggestion' of malicious prosecution or false arrest." (citing *Twombly*, 550 U.S. at 556)); *see also Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) ("An

erroneous order can be valid. Law enforcement officials must not be called upon to answer for the legality of decisions which they are powerless to control or be required to act as pseudo-appellate courts scrutinizing the orders of judges." (cleaned up)).

Johnson's claim against Daniels fails for yet another reason: He hasn't established supervisory liability. Johnson never says (nor could he) that Daniels was personally involved in arresting him and seizing his property. *See generally* Complaint. Indeed, Johnson's claim against Daniels is based on her purported failure to act when Johnson reported Baptiste's and Esquivel's "misconduct and procedural violations" to her. *Id.* at 17. Of course, a supervisory official (like Daniels) is "not vicariously liable under section 1983 for the unconstitutional acts of [her] subordinates." *Ingram v. Kubik*, 30 F.4th 1241, 1254 (11th Cir. 2022). Instead, Johnson must plead that there's a "causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). He can do this in one of two ways: (1) when there's "a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [she] fails to do so"; or (2) when "a supervisor's custom or policy results in deliberate indifference to constitutional rights[.]" *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1355 (11th Cir. 2022) (cleaned up).  Johnson hasn't alleged that his case meets either of these two scenarios, so he's failed to show that Daniels is liable as a supervisor under § 1983.[6]

*      *      *

---

[6] Johnson may try to argue that his illegal arrest and the unlawful seizure of his property are *themselves* evidence of "a history of widespread abuse," an illegal "custom or policy," or both, but the law is clear that a single incident is insufficient to establish supervisory liability. *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2010) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . . A pattern of similar constitutional violations is ordinarily necessary." (cleaned up)); *Owens v. City of Fort Lauderdale*, 174 F. Supp. 2d 1298, 1312 (S.D. Fla. 2001) (Jordan, J.) ("[I]t is the rare instance that only one previous incident will be sufficient to place a municipality on notice of 'widespread abuse' constituting deliberate indifference."); *see also Campbell v. Humphries*, 353 F. App'x 334, 336 (11th Cir. 2009) ("This one incident, however, is not enough to meet the rigorous standard for supervisory liability in this circuit.").

Since Johnson's Complaint names several Defendants who are immune from suit—and because he fails to state a valid claim against the rest—we cannot allow this case to proceed to service. That said, the Eleventh Circuit has repeatedly held that "'a *pro se* plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice'—at least, that is, where 'a more carefully drafted complaint might state a claim.'" *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1132 (11th Cir. 2019) (quoting *Woldeab v. DeKalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018)). "But a district court need not grant leave to amend when either (1) the district court has a clear indication that the plaintiff does not want to amend his complaint, or (2) a more carefully drafted complaint could not state a claim." *Woldeab*, 885 F.3d at 1291. This latter exception—sometimes known as the "futility" exception—applies "if an amended complaint would still fail at the motion-to-dismiss or summary-judgment stage." *L.S. ex rel. Hernandez v. Peterson*, 982 F.3d 1323, 1332 (11th Cir. 2020). While some of Johnson's claims might be salvageable, allowing him to amend others would be an exercise in futility. We'll therefore grant Johnson leave to file an amended complaint as to *some*, but not *all*, of his claims.

For instance, we won't allow Johnson to assert any claims against the Judicial Defendants or the Prosecutor Defendants because they are absolutely immune from any suit arising from their roles in the State Court Cases. *See Cuyler v. Wilson*, 2024 WL 1194422, at *2 (M.D. Fla. Mar. 20, 2024) (Barber, J.) ("In this case, amendment would be futile because every defendant is entitled to absolute immunity."). We also won't permit Johnson to amend his claims under § 1985(3) and § 1986 since *pro se* litigants aren't a class of persons protected by those statutes. *See McColligan*, 2019 WL 1051188, at *6; *see also L.S.*, 982 F.3d at 1332 ("A district court may find futility if a prerequisite to relief is belied by the facts alleged in the complaint." (cleaned up)). Finally, we won't allow Johnson to amend his § 1983 claim against Goldstein because "the underlying facts or circumstances relied upon by [the]

plaintiff [are not] a proper subject of relief." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004).

Conversely, we *will* grant Johnson leave to amend his § 1983 claims against both the Private Defendants and the Officer Defendants. To state a claim against these Defendants, however, Johnson must: (1) explain how the Private Defendants acted under color of state law; (2) explain, beyond mere conclusory statements, how the Officer Defendants violated his constitutional rights; and (3) establish that there was a "causal connection" between Defendant Daniels's actions and the alleged constitutional violations. If Johnson files an amended complaint that fails to satisfy these requirements, we will dismiss the amended complaint *without leave to amend.*

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1. The Plaintiff's Complaint [ECF No. 1] is **DISMISSED**. The Plaintiff's claims against Defendants Fernandez Rundle, Cleveland, Sayfie, Ihekwaba, Stuzin, Fajardo Orshan, Blumstein, Logue, Fernandez, Scales, Gordo, Bokor, and Goldstein are **DISMISSED with prejudice**. The Clerk is directed to **TERMINATE** these Defendants from the case.

2. The Plaintiff's claims under 42 U.S.C. §§ 1985(3) and 1986 are **DISMISSED with prejudice**. The Plaintiff's § 1983 claims against the remaining Defendants are **DISMISSED without prejudice**.

3. The Plaintiff is **GRANTED** leave to file an amended complaint that complies with this Order by **February 23, 2025**. The amended complaint shall be limited *only* to claims under 42 U.S.C. § 1983 against Defendants Hillquist, Friedman, Zawyer, Melone, Daniels, Esquivel, and Baptiste. Johnson's failure to comply with this Order will result in the case being dismissed without prejudice and without further notice. *See* FED. R. CIV. P. 41(b).

4.  The IFP Motion [ECF No. 3] is **DENIED without prejudice**. The Plaintiff may file a new IFP Motion along with his amended complaint.

5.  The Clerk is directed to administratively **CLOSE** this case. The Court will reopen the case once the Plaintiff has filed his amended complaint and otherwise complied with this Order.

**DONE AND ORDERED** in the Southern District of Florida on January 23, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     Levar Curtis Johnson, *pro se*